UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

ELIJAH WILLIAMS,

     Plaintiff,

vs.                                               **COMPLAINT**

THE GREATER HUDSON VALLEY          ECF Case
FAMILY HEALTH CENTER, INC.,

**07 CIV. 0260**

    Defendant.
------------------------------------------------------x

    By and through his counsel, Michael H. Sussman, plaintiff complains as

follows:

    I. **PARTIES**

    1.  Plaintiff Elijah Williams is an African-American of legal age who resides

within this judicial district.

    2.  Defendant Greater Hudson Valley Family Health Center, Inc. is a not-

for-profit corporation organized pursuant to the laws of the State of New York,

operating within this judicial district.  It may sue and be sued and employed

plaintiff during the relevant time period.

    II. **JURISDICTION**

    3.  As plaintiff contends that defendant, acting through its principals and

agents, violated his rights as guaranteed by 42 U.S.C. sec. 1981-a, and engaged in intentional racial discrimination in the terms and conditions of his employment, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. sec. 1988.   This Court also has jurisdiction over plaintiff's pendent/ancillary claim pursuant to 28 U.S.C. sec. 1367 as it arises from the same nucleus of operative facts as does his federal claims.

III.  **STATEMENT OF FACTS**

4.  On or about May 5, 2005, plaintiff commenced working for defendant as Director of Department 5

5.  Several Caucasian employees sought to undermine plaintiff's supervisory authority and were insubordinate to him.

6.  Plaintiff brought these matters to the attention of his Caucasian superiors, but they failed to support him.

7.  This followed plaintiff's being advised before his hire that staff in his department had not been properly supervised for several years, that he needed to bring them in line and that senior management understood this might engender complaints against him.

8.  In fact, when plaintiff sought to apply singular standards to the behavior of staff, several Caucasian subordinates openly mutinied against his leadership and

behaved in an unprofessional manner.

9.  Senior staff disallowed plaintiff from appropriating resolving improper staff behavior.

10.  One Caucasian staff member, a counselor, refused to meet with plaintiff, rolled her eyes when requested to do so and undermined programs intended to connect defendant with the community it served.

11.  Despite these actions/omissions, defendant took no disciplinary action against this Caucasian subordinate.

12.  A second Caucasian, a supervisor, also undermined plaintiff, advising staff, for instance, not to perform HIV testing during the national "night out" program in early August 2005, though plaintiff had directed staff to do so.

13.  Again, though plaintiff advised his superiors about this conduct, they refused to discipline the Caucasian supervisor or allow him to do so.

14.  After these incidents and others, plaintiff confronted defendant's CEO and advised her that he believed he was being discriminated against on the basis of his race and that white staff were being permitted to violate his directions with impunity and without consequence from senior staff of the same race.

15.  After plaintiff made these accusations, defendant's CEO met with the plaintiff and the Caucasian counselor who had complained about him and failed to

follow his directions or properly do her job.

16. The contents of this meeting confirmed that the white counselor was not properly performing her job duties and, at this meeting, she resigned, a course of action which plaintiff strongly supported.

17. However, shortly after the meeting, the white counselor rescinded her resignation and the Executive Director told plaintiff that she had no reason to terminate this employee.

18. Instead, defendant terminated plaintiff's employment.

19. When confronted with the claim of racial discrimination, defendant's CEO had become highly defensive and touted her contribution to the provision of health care in the inner city.

20. However, to plaintiff's observation, the AIDS project, which he was tasked with directing, was in total disarray upon his arrival, there were no procedures and protocols in place for the program and it failed to properly serve the community.

21. Plaintiff also observed that program accountability was sorely lacking, that data collection function was far behind and dysfunctional and that program objectives were not being attained.

22. In that the target population for the program was largely comprised of

people of color, plaintiff came to believe that the ongoing mal-administration of the program reflected a form of racism which found parallel in how senior staff mistreated him.

23.  Plaintiff sought to remedy the significant management flaws he found when assigned the position of director of Department 5.

24.  Despite his more than satisfactory job performance and his significant efforts to improve the status and operation of the AIDS program, defendant terminated plaintiff in September 2005.

25.  No neutral, non-discriminatory reasons informed plaintiff's termination.

26.  On account of this termination, plaintiff suffered disparate treatment in that the agency maintained on staff a white person who was not performing her job properly and who had been insubordinate to plaintiff.

27.  By dint of his termination, plaintiff has suffered pecuniary and on-pecuniary losses, like humiliation, emotional anguish, stress and loss of standing in the community.

IV.  **PRAYER FOR RELIEF**

28.  Plaintiff incorporates paras. 1-27 as if fully repeated herein.

29.  By terminating plaintiff's employment intentionally on account of his race, defendant has violated 42 U.S.C. sec. 1981-a and section 296 of the

Executive Law of the State of New York.

30. By subjecting plaintiff to disparate terms and conditions of employment, namely the lack of proper administrative support, defendant subjected plaintiff to intentional racial discrimination in contravention of 42 U.S.C. sec. 1981-a and Section 296 of the Executive Law of the State of New York.

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to fairly hear and decided the claims set forth herein;

c) award compensatory damages to plaintiff with pre and post-judgment interest;

d) award punitive damages against defendant and to plaintiff for the malicious racial discrimination alleged above;

e) award attorneys fees and costs to plaintiff pursuant to 42 U.S.C. sec. 1988;

f) reinstate plaintiff to his former position or to a comparable position or, in the alternative, award his front pay until he reaches the age of 65 and

g) enter any other relief it deems just and warranted in light of the facts of the case.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

LAW OFFICES OF MICHAEL H. SUSSMAN
PO BOX 1005
GOSHEN, NY 10924
(845)-294-3991
COUNSEL FOR PLAINTIFF